UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                        x     MDL Docket No. 1500

In re AOL TIME WARNER, INC.      x     02 Civ. 5575 (SWK)
SECURITIES AND "ERISA" LITIGATION   x
                                          x    **OPINION AND ORDER**
-----------------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

On September 30, 2005, the Court certified a class (the "Class") for the settlement of securities fraud claims arising out of the merger of America Online, Inc. ("AOL") and Time Warner, Inc. ("Time Warner") into AOL Time Warner, Inc. ("AOLTW").[1] At that time, the Court also preliminarily approved a settlement of the Class's claims (the "Settlement") and approved the distribution of notice to Class members. That notice informed Class members of their rights under the Settlement and their obligation to opt out of the Settlement or be bound by its terms, including the release of claims related to this litigation. The Court formally approved the Settlement in a final order signed April 19, 2006 (the "April 19 Order"). Nearly a year later, Joseph M. Sugranes and Ramon J. Sugranes (the "Sugraneses") filed a complaint in New York State Court claiming securities fraud in connection with the stock decline that followed the AOLTW merger (the "State Action"). The defendants

---

[1] Although the merged entity has since changed its name from AOLTW to Time Warner, Inc., for clarity, the Court will continue to refer to that entity as AOLTW.

now move the Court to enforce the April 19 Order by permanently
enjoining the Sugraneses from prosecuting the State Action. For
the reasons that follow, the Court grants the defendants'
motion.

## I.   BACKGROUND

Familiarity with the general context of this litigation is
presumed. See generally In re AOL Time Warner, Inc. Sec. &
"ERISA" Litig. ("In re AOL Time Warner I"), 381 F. Supp. 2d 192
(S.D.N.Y. 2004) (partially granting motion to dismiss); In re
AOL Time Warner, Inc. Sec. & "ERISA" Litig. ("In re AOL Time
Warner II"), No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006) (approving settlement). The Court limits
its discussion here to those facts and circumstances pertinent
to the instant motion.

Numerous class action suits alleging securities fraud
following the AOLTW merger were filed and consolidated in this
Court in the summer and fall of 2002. Following extensive motion
practice and discovery, the lead plaintiffs for the class and
the defendants entered settlement negotiations, reaching an
agreement in September 2005. After a hearing on September 28,
2005, the Court preliminarily approved the Settlement, as
memorialized in a stipulation of settlement (the "Stipulation"),
and certified the Class. In addition, the Court approved a plan
for the distribution of settlement notice to the Class.

Consistent with the Court's direction, the court-appointed settlement administrator, Gilardi & Co. ("Gilardi"), sent notice packages to over four and a half million putative class members, and published summary notice in four national publications. The notice clearly stated that the Class encompassed all persons who acquired AOL stock during the period January 27, 1999, through and including January 11, 2001, and all persons who acquired AOLTW stock or bonds during the period January 11, 2001, through and including August 27, 2002 (the "Class Period"). On its first page, in bold print, the notice directed Class members wishing to exclude themselves from the Class to file an opt-out request by January 9, 2006. Furthermore, the notice indicated that parties failing to timely submit an opt-out request would "give up [their] right to file [a] lawsuit or participate in any other lawsuit concerning the legal claims being released in the case." (Skaistis Decl. Ex. C.)[2]

The Court held a final settlement approval hearing on February 21, 2006. Following that hearing, the Court approved

---

[2] The Stipulation, which the notice indicated was accessible to the Class at the courthouse and at a website maintained by Gilardi, also addresses the scope of claims released by parties that failed to opt out of the Class. Specifically, the release covers "any and all claims . . . whether based on federal, state, local, statutory or common law or any other law, rule or regulation . . . including both known claims and Unknown Claims . . . which arise out of, or are based upon, the purchase or exchange or other acquisition of AOL and Time Warner stock" during the Class Period. (Skaistis Decl. Ex. A ¶ IV.A.18.)

3

the Settlement, including the propriety of Gilardi's notice distribution, in the April 19 Order. That Order also stated that the Court reserved "exclusive and continuing jurisdiction over the Securities Class Action . . . for the purposes of . . . any . . . matters related to the Settlement." (April 19 Order ¶ 17.)

On March 12, 2007, the Sugraneses filed a complaint in New York State Court "claiming securities fraud arising out of the collapse in the price of AOL Time Warner stock" after the merger (the "State Action"). (Skaistis Decl. Ex. F ¶ 3.) The Sugraneses alleged that at the time of the merger they "owned more than 20,000 shares of Time Warner Stock . . . and 32,000 shares of AOL," which they then exchanged for shares of AOLTW. (Skaistis Decl. Ex. F. ¶ 3.) The Class defendants now move the Court to enforce the April 19 Order by permanently enjoining the Sugraneses from prosecuting the State Action.

## II.  DISCUSSION

The State Action alleges that the Sugraneses exchanged AOL and Time Warner stock for AOLTW shares pursuant to the merger. (Skaistis Decl. Ex. F. ¶ 3.) This places their acquisition of damaged securities squarely within the Class Period. (Skaistis Decl. Ex. A ¶ 21; Skaistis Decl. Ex. C.) Furthermore, the Sugraneses seek damages arising out of the same course of conduct that was alleged and settled in the class action litigation. Compare In re AOL Time Warner I, 381 F. Supp. 2d at

4

204-06; In re AOL Time Warner II, 2006 WL 903236, at *1-*2, with Skaistis Ex. F ¶¶ 3-13. Absent evidence that the Sugraneses filed a timely request for exclusion, they are members of the Class and are bound by the Settlement, including the release of claims as set forth in the Stipulation and the April 19 Order.

The Sugraneses do not appear on the list of valid requests for exclusion received by Gilardi and submitted to the Court prior to the Settlement. (Forrest Decl. Ex. 1, Feb. 21, 2006.) The Sugraneses concede that they did not submit a request for exclusion from the Settlement by the January 9 deadline, but instead produce a copy of an opt-out form, dated February 12, 2006, and ask the Court to accept their untimely request for exclusion. However, Gilardi did not receive any correspondence sent by the Sugraneses either before or after the opt-out deadline (Foley Aff. ¶ 6, May 29, 2007), and the Sugraneses do not provide any proof that they mailed that form. Even if the Sugraneses were able to prove that they mailed their opt-out request on that date, however, the Sugraneses do not offer any valid justification for submitting their request more than a month past the opt-out deadline. Under these circumstances-- wherein the Sugraneses offer no proof that they submitted an opt-out request, filed suit over a year after they purport to have submitted an opt-out request, and provide no valid reason for the delay of their filings--the Court declines to enlarge

5

the deadline date for opting out of the Class in order to accept
their untimely request. See In re PaineWebber Ltd. P'ships
Litig., 147 F.3d 132, 136 (2d Cir. 1998) (affirming district
court's refusal to enlarge an opt-out deadline for plaintiff
that provided insufficient justification for his delay); see
also In re Prudential Ins. Co. of Am. Sales Practices Litig.,
177 F.R.D. 216, 236 (D.N.J. 1997) (declining to accept opt-out
requests filed "within months" of the deadline because the
establishment of "an arbitrary cut-off date would be unfair to
latecomers who may have more compelling reasons than those class
members" before the court at that time); Horton v. Metro. Life
Ins. Co., 459 F. Supp. 2d 1246, 1255 (M.D. Fla. 2006) (enjoining
subsequent actions by class member who failed to timely opt out
of class settlement). Therefore, because the Sugraneses did not
timely opt out of the Settlement, they are Class members and are
subject to the release of their claims.

The Court explicitly retained "exclusive and continuing
jurisdiction" over the enforcement of the Settlement in the
April 19 Order. As the Sugraneses are attempting to bring claims
that they released pursuant to the Settlement, the Court has
jurisdiction over the subject matter of the State Action. See In
re Prudential, 177 F.R.D. at 229 (concluding that the court had
subject matter and personal jurisdiction over class members and
lawsuits that they filed in contravention of the settlement's

release provision). Moreover, because the Court has original

jurisdiction over the underlying class action litigation and the

Settlement, the All-Writs Act grants the Court "ancillary

jurisdiction to issue writs 'necessary or appropriate in aid of'

that jurisdiction." In re Baldwin-United Corp., 770 F.2d 328,

335 (2d Cir. 1985) (quoting 28 U.S.C. § 1651). "This provision

permits a district court to enjoin actions in state court where

necessary to prevent relitigation of an existing federal

judgment, notwithstanding the fact that the parties to the

original action could invoke res judicata in state courts

against any subsequent suit brought on the same matters." Id.[3]

The Court, then, may enforce the April 19 Order by

permanently enjoining the Sugraneses from prosecuting their

released claims via the State Action if the defendants

demonstrate "(1) actual success on the merits and (2)

irreparable harm." Cartier v. Symbolix, Inc., 454 F. Supp. 2d

175, 186 (S.D.N.Y. 2006) (citation and internal quotation marks

omitted); accord Lusk v. Village of Cold Spring, 475 F.3d 480,

485 (2d Cir. 2007). As discussed above, the former requirement

---

[3]   In re Baldwin-United took into consideration the Anti-
Injunction Act's general prohibition against the injunction of
state court proceedings, but recognized that a federal court may
issue an injunction where necessary "to protect or effectuate
its judgments." 28 U.S.C. § 2283. Therefore, although the
defendants submit that they are seeking an injunction against
the Sugraneses' prosecution of the State Action rather than
against the state court proceeding itself, the statutory scheme
also permits enjoining the proceeding in this situation.

is amply met in that the Sugraneses, as Class members, have released the claims they now seek to assert. (April 19 Order ¶ 7.) Furthermore, the latter requirement is met because "a party suffers irreparable harm when it is required to relitigate in state court issues previously decided in federal court." Canady v. Allstate Ins. Co., 282 F.3d 1005, 1020 (8th Cir. 2002) (citation omitted); accord Quintero v. Klaveness Ship Lines, 914 F.2d 717, 720-21 (5th Cir. 1990); Gross v. Barnett Banks, Inc., 934 F. Supp. 1340, 1347 (M.D. Fla. 1995). Therefore, the Court grants the defendants' motion for a permanent injunction.

## III. CONCLUSION

For the reasons stated above, the Court permanently enjoins the Sugraneses from prosecuting the State Action. If they choose to submit a late claim to the Settlement, their inclusion in future distributions from the Settlement fund will be considered on the same terms as any other claimants that have submitted valid proofs of claim after the deadline.

SO ORDERED.

_____
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          June 27, 2007

8