```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   x
IN RE AOL TIME WARNER, INC.,       x    MDL Docket No. 1500
SECURITIES AND "ERISA" LITIGATION  x    02 Cv. 5575 (SWK)
                                   x
                                   x    OPINION AND ORDER
                                   x
-----------------------------------X
```

**SHIRLEY WOHL KRAM, U.S.D.J.**

On September 30, 2005, the Court certified a class (the "Class") for the settlement of securities fraud claims arising out of the merger of America Online, Inc. ("AOL") and Time Warner, Inc. ("Time Warner") into AOL Time Warner, Inc. ("AOLTW").[1] At that time, the Court also preliminarily approved a settlement of the Class's claims (the "Settlement"), including funds provided by a separate deferred prosecution agreement ("DPA") that AOLTW had entered with the Department of Justice (the "DOJ Funds"), and approved the distribution of notice to Class members. The Court formally approved the Settlement in a final order signed April 19, 2006. In April 2007, Lead Securities Plaintiff moved for an Order directing the payment of the expenses of the settlement administration, the initial distribution of the DOJ Funds, and the SEC Fair Fund. BizProLink LLC ("BizProLink") objected to this motion on the

---

[1] Although the merged entity has since changed its name from AOLTW to Time Warner, Inc., for clarity, the Court will continue to refer to that entity as AOLTW.

ground that it was entitled to a portion of the DOJ Funds. The Court declared BizProLink's objection to be without merit and granted Lead Plaintiff's Motion in an opinion and order signed May 2, 2007. BizProLink has filed an appeal of this decision. Lead Securities Plaintiff now moves for an order requiring BizProLink to file an appeal bond.

**I.   BACKGROUND**

Familiarity with the general context of this litigation is presumed. See generally In re AOL Time Warner Sec. & "ERISA" Litig., ("In re AOL Time Warner I"), 381 F. Supp. 2d 192 (S.D.N.Y. 2004) (partially granting motion to dismiss); In re AOL Time Warner, Inc. Sec. & ERISA Litig. ("In re AOL Time Warner II"), MDL Docket No. 1500, 02 Cv. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) (approving settlement); In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., MDL Docket No. 1500, 02 Cv. 5575 (SWK), 2007 WL 1856550 (S.D.N.Y. June 27, 2007) (enjoining party from prosecuting state securities fraud action based on same facts). The Court limits its discussion here to those facts and circumstances pertinent to the instant motion.

In April 2006, the Court approved a $2.5 billion settlement in the AOLTW securities class action. In the Opinion approving the settlement, the Court overruled an objection arguing that the DOJ Funds should not be distributed along with the class action settlement. See In re AOL Time Warner II, 2006 WL

903236, at *13-*14.  Nearly a year later, as the Court prepared to order an initial distribution of 91% of the settlement and all of the DOJ Funds, BizProLink objected to the distribution of the DOJ Funds, arguing that it was entitled to approximately $10 million of those funds as a result of its business dealings with AOL.  The Court rejected BizProLink's objection, concluding that the settlement was only intended for AOLTW shareholders, and that it had already decided the issue in April 2006 when approving the settlement.  See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., 02 Cv. 5575 (SWK), May 2, 2007 Order.  BizProLink appealed, and the parties entered a stipulation that reserves approximately $10 million of the DOJ Funds to satisfy any judgment that BizProLink might win.  The Court approved the stipulation in an order dated June 20, 2007.  Lead Securities Plaintiff contends that BizProLink's appeal is frivolous and now seeks to require BizProLink to file an appeal bond to cover the costs that will arise from BizProLink's appeal.[2]

## II. DISCUSSION

### A. BIZPROLINK IS REQUIRED TO POST AN APPEAL BOND

---

[2] BizProLink has requested the opportunity to present oral arguments in connection with Lead Securities Plaintiff's Motion. See BizProLink's Opp. 15.  In light of the information presented in the parties' briefs, the Court concludes that oral argument is not necessary.  See, e.g., Allison v. UNUM Life Ins. Co., 04 Cv. 0025(JSWDW), 2005 WL 1457636, at *1 (E.D.N.Y. Feb. 11, 2005) (determining on basis of written submissions that oral argument is not necessary).

Disposing of Lead Securities Plaintiff's motion requires the Court to decide whether to require the posting of a bond, and, if a bond is appropriate, what costs it should cover. Federal Rule of Appellate Procedure 7 states that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. The Second Circuit has articulated Appellate Rule 7's purpose as the protection of an appellee against the risk of nonpayment by an unsuccessful appellant (in the Adsani case, by an appellant with no assets in the United States). See Adsani v. Miller, 139 F.3d 67, 70 (2d Cir. 1998), cert. den. 525 U.S. 875 (1998). Consequently, when deciding whether to require an appellant to post an appeal bond, district courts consider several factors, including "(1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct." Baker v. Urban Outfitters, Inc., 01 Cv. 5440 (LAP), 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006) (citing cases).

In the case at hand, BizProLink has submitted no financial information, so the Court concludes that it is not arguing that it lacks the financial ability to post a bond. See Baker, 2006 WL 3635392, at *1 (reaching same conclusion on similar facts).

Turning to the second factor, Lead Securities Plaintiff alleges that "[a]llowing BizProLink to appeal without posting a sufficiently large bond would expose the Securities Class to the grave risk that it will not be reimbursed for the substantial expenses imposed by the appeal." Lead Securities Plaintiff's Mot. 2. Plaintiff, however, does not allege any particular facts in furtherance of this contention, nor are any apparent in the record. Compare Adsani, 139 F.3d at 70 (involving appellant with no assets in United States); Tri-Star Pictures, Inc. v. Unger, 32 F. Supp. 2d 144, 147 (S.D.N.Y. 1999) (same); Baker, 2006 WL 3635392, at *1 (finding risk of nonpayment where appellant failed to comply with prior orders to pay other party's costs); Watson v. E.S. Sutton, Inc., 02 Cv. 2739 (KMW), 2006 WL 4484160, at *2 (S.D.N.Y. Dec. 6, 2006) (stating that appellant's intention to file for bankruptcy constitutes risk of nonpayment); RBFC One, LLC v. Zeeks, Inc., 02 Cv. 3231 (DFE), 2005 WL 2140994, at *1 (S.D.N.Y. Sept. 2, 2005) (finding risk of nonpayment where appellant is "shell corporation").[3] Rather, Plaintiff appears to imply that there is a risk of nonpayment because of the magnitude of the costs it expects to incur defending its appeal. See Lead Securities Plaintiff's Mot. 2 (anticipating $983,625.00 in costs).

---

[3] BizProLink is a domestic corporation.

5

Third, "[a] district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal." Adsani, 139 F.3d at 79. BizProLink's appeal appears to rest on (1) a Due Process clause argument that it improperly presents for the first time on appeal, see BizProLink's Opp. 3 (arguing that the Court violated BizProLink's "due process rights by barring it from asserting a claim against the [DOJ Funds] where BizProLink was not provided with notice that its compensation rights could be adversely affected unless it objected to the inclusion of those funds with other settlement funds in the [AOLTW] action"); and (2) the company's insistence that a prior, unrelated agreement in which AOLTW acknowledged that BizProLink could assert a claim to a portion of the DOJ Funds entitles BizProLink to a portion of those funds, despite the Court's conclusion that the DPA puts the DOJ Funds under AOLTW's "discretion and control" and "does not expressly indicate that the funds must be distributed pro rata to all harmed investors," In re AOL Time Warner II, 2006 WL 903236, at * 14 (emphasis added).

BizProLink failed to file a timely objection to the settlement plan. It concedes that it is not a securities class member. The Court specifically rejected another non-class member's argument that it was entitled to a portion of the DOJ

6

Funds. See In re AOL Time Warner II, 2006 WL 903236, at *13-*14. Threfore, the Court concludes that BizProLink's arguments lack merit, and BizProLink is unlikely to succeed on appeal.

Finally, the record contains some evidence of bad faith and vexatious conduct on the part of BizProLink during this litigation. BizProLink is not a securities class member; its claim is based solely on its individual dealings with AOLTW. Yet counsel for BizProLink has repeatedly approached Lead Securities Plaintiff's counsel, seeking "settlement" of BizProLink's claim. See Declaration of Lori A. Johnson ("Johnson Decl.") ¶ 8-9. Furthermore, counsel for BizProLink has not complied with its promise to send Lead Securities Plaintiff the information providing the basis for BizProLink's calculation of the amount of its claim. See id. ¶ 9. In other words, not only did BizProLink attempt to extract a settlement from the Plaintiff, but it failed to provide the information necessary to complete the extraction.

In the context of class action litigation, at least one court has required that an appellant post an appeal bond that covers costs stemming from the appellant's use of a lawsuit as a vehicle to pursue "his unrelated, individual claims." See In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 124, 127 (S.D.N.Y. 1999). Although BizProLink, unlike the appellant in In re NASDAQ, has not filed repeated, unrelated motions, it has

7

nonetheless relentlessly insisted that its agreement with AOLTW—which is completely unrelated to the underlying class action suit—entitles it to a share of the securities class members' settlement proceeds, despite all evidence to the contrary. It continues to delay the full distribution of settlement funds, requiring the class to incur further expenses, all the while asking Lead Securities Plaintiff for a "settlement." Based on these factors, the Court concludes that an appeal bond is appropriate to secure repayment of Plaintiff's costs on appeal.

**B. COSTS COVERED BY THE APPEAL BOND**

  **1. TAXABLE COSTS**

The question of whether to impose an appeal bond is distinct from the issue of what costs the bond can and should cover. Lead Securities Plaintiff argues that the appeal bond should include the taxable costs specified by Federal Rule of Appellate Procedure 39, the cost of delay and disruption of the settlement administration, and the attorney's fees that Plaintiff will incur in defending the appeal. See Lead Securities Plaintiff's Mot. 2-3, 9-18. Additionally, Plaintiff asks the Court to require BizProLink to post a bond for double the total amount of costs, in light of the fact that the Court of Appeals could, pursuant to Federal Rule of Appellate Procedure 38, award double costs as sanctions should it determine that BizProLink's appeal is frivolous. See id. 18.

8

A district court may include the costs listed in Appellate Rule 39(e) and 28 U.S.C. § 1920 when calculating the amount of an appeal bond.  See 20 Moore's Federal Practice P.307.10[2] (2007); see also Fed. R. App. P. 39(e) (listing costs taxable by district court for benefit of prevailing party on appeal); 28 U.S.C. § 1920 (listing costs taxable by federal judges and clerks). Appellate Rule 39(e) authorizes the taxing of the cost of "the preparation and transmission of the record."  Fed. R. App. P. 39(e).  Plaintiff anticipates incurring $800.00 in printing and copying costs during its defense of BizProLink's appeal.  Lead Securities Plaintiff's Mot. 9.  This amount is therefore included in the required appeal bond.

**2.  COST OF DELAY IN SETTLEMENT ADMINISTRATION**

Lead Securities Plaintiff also requests that the appeal bond include the costs that will result from the delay in administration of the settlement fund.  Damages for delay include, inter alia, "deterioration [of property] by waste, or want of repair, or the accumulation of taxes or other burdens." Omaha Hotel Co. v. Kountze, 107 U.S. 378, 392 (1883).   In this case, Plaintiff seeks insurance against "waste" of the settlement fund stemming from the delay in the initial distribution of the settlement; the creation of the DOJ Funds Reserve incident to BizProLink's appeal; the administration and escrow costs accumulating while the appeal is pending; and the

likely need for a third and final distribution of the DOJ funds, should BizProLink lose its appeal. See Lead Securities Plaintiff's Mot. 11-12 (citing Johnson Decl.; Declaration of Peter L. Crudo ("Crudo Decl.")).

In Adsani, the Second Circuit established that the costs covered by an Appellate Rule 7 appeal bond are not limited to those listed in Appellate Rule 39. See Adsani, 139 F.3d at 74 ("Rule 39 does not define costs for all of the Federal Rules of Appellate Procedure."). The Adsani Court, however, also stated that "'[c]osts' under [Appellate] Rule 7 may include the definition of 'costs' contained in the relevant statute under which appeal is sought and are not limited by the enumeration fo some 'costs' found in [Appellate] Rule 39." Id. at 75 n.9 (emphasis added). In this case, there is no relevant underlying statute that provides for the awarding on appeal of costs incident to delay, and such costs are not listed in Appellate Rule 39.[4] The appeal bond therefore cannot include the estimated

---

[4] In In re NASDAQ, Judge Sweet did impose an appeal bond that covered delay costs on the ground that "[a]n appeal bond provides a 'guarantee that the appellee can recover from the appellant the damages caused by the delay incident to the appeal.'" In re NASDAQ, 187 F.R.D. at 128 (quoting Morgan Guarantee Trust Co. v. Republic of Palau, 702 F. Supp. 60, 65 (S.D.N.Y. 1988), vacated on other grounds, 924 F.2d 1237 (2d Cir. 1991)). With all due respect to Judge Sweet, however, this guarantee does not refer to appeal bonds, but to supersedeas bonds, which serve a different purpose and are governed by a separate Federal Rule of Appellate Procedure. See Fed. R. App. P. 8. Indeed, the court in Morgan Guarantee Trust Co. was

explicitly referring to the supersedeas bond's ability to "guarantee[] that the appellee can recover the interest that accrues on the judgment during appeal, guarantee[] that the appellant will satisfy the judgment plus interests and costs if it is affirmed on appeal." Morgan Guarantee Trust Co., 702 F. Supp. at 65. See also In re Diet Drugs Prods. Liab. Litig., 99 Cv. 20593, 2000 WL 1665134, at *4 (E.D. Pa. Nov. 6, 2000) ("It appears that In re NASDAQ overlooked the subtle but important difference between cost bonds and supersedeas bonds . . . ."). Given that the Second Circuit has been explicit in its distinction between supersedeas and appeal bonds, see Adsani, 139 F.3d at 70 n.2 (noting that "a supersedeas bond is retrospective covering sums related to the merits of the underlying judgment (and stay of its execution), whereas a cost bond is prospective relating to the potential expenses of litigating an appeal," and that the two "should not be confused") (internal citations and quotations omitted), the Court is hesitant to apply Rule 8 jurisprudence in the Appellate Rule 7 context.

Moreover, although Lead Securities Plaintiff is correct that other courts have imposed bonds that include the cost of delay in administration of a settlement fund, see, e.g., In re Broadcom Sec. Litig., SACV 01-275 (MLGx) (C.D. Cal. Dec. 5, 2005) (Pl.'s Ex. B); In re Compact Disc Minimum Advertised Price Antitrust Litig., MDL 1361, 2003 WL 22417252, at *1 (D. Me. Oct. 7, 2003), these courts are in circuits that do not necessarily share the Second Circuit's requirement that the definition of "costs" for Appellate Rule 7 purposes should come from Rule 39, 28 U.S.C. § 1920, or the statute underlying the litigation. In re Compact Disc relies on the First Circuit decision in Sckolnick v. Harlow, 820 F.2d 13 (1st Cir. 1987) (per curiam), which vests wide discretion in district courts to include costs in bonds pursuant to Federal Rule of Appellate Procedure 38, discretion that is not tempered by the requirement of an underlying statute authorizing the awarding of certain costs, see In re Compact Disc, 2003 WL 22417252, at *1; Adsani, 139 F.3d at 73 (distinguishing Skolnick because it "lacked any statute authorizing attorney's fees as part of the costs," and citing case only to demonstrate that First Circuit includes attorney's fees as costs awardable under Appellate Rule 7). The court in In re Broadcom justified its inclusion of delay costs in the amount of an appeal bond on the ground that the "Objector's appeal is tantamount to a stay of the judgment approving class settlement. . . . Because there is no supersedeas bond to protect the Class from these risks, this Court finds it proper to impose a[n Appellate] Rule 7 bond to

11

$883,925.00 in costs caused by the delay in administering the settlement.[5]

### 3. ATTORNEY'S FEES

For similar reasons, the appeal bond sought by Lead Securities Plaintiff cannot include the cost of the attorney's fees likely to be incurred defending the appeal. The Second Circuit allows the inclusion only of those costs enumerated in Appellate Rule 39, 28 U.S.C. § 1920, or the substantive statute underlying the appeal. See 139 F.3d at 75 n.9; see also Baker, 2006 WL 3635392, at *1 (including attorney's fees in bond pursuant to Copyright Act); In re NASDAQ, 187 F.R.D. at 128 (including attorney's fees in bond pursuant to Clayton Act); Tri-Star Pictures, Inc. v. Unger, 32 F. Supp. 2d 144, 150 (S.D.N.Y. 1999) (including attorney's fees in bond pursuant to Lanham Act); cf. RBFC One, LLC v. Zeeks, Inc., 02 Cv. 3231

---

serve the same purpose." In re Broadcom, SACV 01-275 (MLGx) at 7. The Court is reluctant to follow this line of reasoning in light of the Second Circuit's explicit recognition of the distinction between the two types of bonds.

[5] BizProLink makes two arguments in opposition to the inclusion of delay costs in the appeal bond. First, BizProLink asserts that the creation of the $10.6 million DOJ Reserve Fund (which continues to accrue interest) and the prior existence of a $225 million contingency fund will prevent any delay in distribution of the settlement proceeds. See BizProLink's Opp. 11-13. Second, BizProLink argues that "the inclusion of administrative costs for delay is limited—as are attorney's fees—to cases involving fee-shifting statutes related to plaintiff's underlying claim." Id. at 11-12. Because the Court agrees with BizProLink's second contention, it does not address the merits of the first.

(DFE), 2005 WL 2140994, at *2 (S.D.N.Y. Sept. 2, 2005) (refusing to include cost of attorney's fees in appeal bond where only underlying source of authority for awarding such fees was private contractual provision).

Lead Securities Plaintiff apparently concedes that there is no statute underlying the action that provides for the payment of attorney's fees on appeal. Plaintiff argues, however, that the Court can find authority to include this cost in the appeal bond in Federal Rule of Appellate Procedure 38 and 28 U.S.C. § 1927. See Lead Securities Plaintiff's Mot. 13-14. For the reasons discussed below, the Court declines to include the attorney's fees under either source of authority.

Appellate Rule 38 states that, "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." At the district court level, the comparable rule for awarding sanctions is Federal Rule of Civil Procedure 11. Adsani did not address the propriety of a district court's using Appellate Rule 38 to include certain costs in an appeal bond. The few district courts in the Second Circuit to address the issue have refused to do so, reasoning that use of Appellate Rule 38 by district courts would infringe on the authority that the Rule explicitly grants to the Court of

Appeals. See In re NASDAQ, 187 F.R.D. at 128 n.4; In re Allen-Main Assocs. Ltd. Pshp., 229 B.R. 577, 579 (Bankr. D. Conn. 1999). These decisions relied on the same reasoning used in In re American President Lines, Inc., 779 F.2d 714, 717 (D.C. Cir. 1985), in which the D.C. Circuit held that a district court's use of Appellate Rule 38 to include certain costs in an appeal bond "effectively preempts th[e Court of Appeals's] prerogative to determine, should [appellant's] appeal be found to be frivolous, whether [appellee] is entitled to a Rule 38 recovery." Id.

In support of its motion, Plaintiff cites Sckolnick v. Harlow, 820 F.2d 13 (1st Cir. 1987) (per curiam), in which the First Circuit approved a bond grounded on the district court's implicit finding that "the appeal might be frivolous and that an award of sanctions against plaintiff on appeal was a real possibility." Id. at 15. As already discussed, see supra note 2, however, the First Circuit does not recognize Adsani's requirement that attorney's fees be authorized by the substantive statute underlying the litigation. Plaintiff also cites In re Broadcom Securities Litigation, SACV 01-275 (MLGx) (C.D. Cal. Dec. 5, 2005) (Pl.'s Ex. B), in which a California district court used Appellate Rule 38 and § 1927 in order to include attorney's fees in the cost of an appeal bond. See id. at 8-11. Recently, however, the Ninth Circuit held that it was

improper for a district court to use Appellate Rule 38 for this purpose. See Azizian v. Federated Dept. Stores, Inc., 05 Cv. 15847, 05 Cv. 16600, 2007 WL 2389841, at *8 (9th Cir. Aug. 27, 2007). The court cited In re American President Lines and further reasoned that the exceptional nature and unpredictable amount of Appellate Rule 38 awards could cause district courts taking such awards into account to impose a large bond "more likely to chill an appeal than a bond covering the other smaller, and more predictable costs on appeal." Id. This Court agrees with the courts discussed above. Sanctioning appellants under Appellate Rule 38 is a matter for the court of appeals, and including potential Appellate Rule 38 sanctions in the amount of an appeal bond risks infringing on that authority and saddling appellants with a potentially prohibitive bond.[6]

For similar reasons, the court will not rely on § 1927 to include attorney's fees in the amount of the appeal bond imposed on BizProLink. This statute authorizes a court to require "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously" to "satisfy personally the excess

---

[6] Lead Securities Plaintiff also cites several cases from the Second Circuit in support of its argument that the Court should rely on Rule 38 in order to include attorney's fees in the appeal bond. See Lead Securities Plaintiff's Mot. 13-14 (citing cases). These cases, however, involve the awarding of Rule 38 sanctions by the Court of Appeals and do not address whether district courts may properly consider anticipated Rule 38 awards when setting the amount of appeal bonds.

15

costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.  Unlike Appellate Rule 38, section 1927 does not vest exclusive authority to award sanctions in the court of appeals.  The Second Circuit, however, has warned district courts not to chill appeals by imposing section 1927 awards too liberally.  See, e.g., Schoenberg v. Shapolsky, 971 F.2d 926, 935 (2d Cir. 1992); Cheng v. GAF Corp., 713 F.2d 886, 891-92 (2d Cir. 1983), vacated on other grounds, 472 U.S. 1023 (1985).  Additionally, just as a court of appeals is better positioned to determine whether an appeal is so frivolous as to justify Appellate Rule 38 sanctions, it is also better able to determine whether an attorney's conduct on appeal warrants an award under section 1927.  See In re Cardizem CD Antitrust Litig., 481 F.3d 355, 362 (6th Cir. 2007) (reasoning that "[t]he frivolity predicate of an Appellate Rule 38 order parallels the unreasonableness and vexatiousness determinations required by § 1927," and concluding that only the court of appeals may determine whether § 1927 costs are warranted because "[appellee's] additional expenses were caused not by the filing of the notice of appeal, but by the pursuit of that appeal in the [circuit court]").  Finally, the Court notes that the Adsani opinion contains an extensive discussion of § 1927, see Adsani, 139 F.3d at 71-72, yet the Court of Appeals did not mention the statute as another source of authority for the definition of

16

"costs" includable in an appeal bond.[7]  Under these circumstances, the Court finds insufficient authority to justify using either Appellate Rule 38 or § 1927 to include an anticipated attorney's fees award in the appeal bond.

### 4. DOUBLING THE BOND AMOUNT

Finally, Plaintiff asks that the Court double the total amount of the appeal bond in anticipation of an Appellate Rule 38 award of double costs by the Court of Appeals.  Lead Securities Plaintiff's Mot. 18; Lead Securities Plaintiff's Reply 4 n.4.  For the reasons discussed in Part II.B.3, supra, the Court declines to rely on Appellate Rule 38 in determining the costs includable in the appeal bond.  Therefore, the Court will not double the appeal bond amount.  Accord. In re NASDAQ,

---

[7] The Court of Appeals mainly discussed Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980), in which the Supreme Court held that the word "costs" in an earlier version of § 1927 did not encompass attorney's fees.  See Adsani, 139 F.3d at 71-72.  The Adsani court noted that Congress has since amended § 1927 to include attorney's fees, id. at 71 n.4, but did not include the statute as one that could help define "costs" includable in an appeal bond, instead mentioning only Rule 39, 28 U.S.C. § 1920, and the substantive statute underlying the appeal.
   The Court also notes that district courts have imposed bonds that anticipate awards under § 1927 pursuant to Local Rule 54.2.  See, e.g., Bressler v. Liebman, 96 Cv. 9310 (LAP), 1997 WL 466553 (S.D.N.Y. Aug. 14, 1997).  This rule, however, governs only "original bonds" to cover costs incurred in district court and is therefore distinct from Appellate Rule 7, which covers costs on appeal.  See RBFC One, LLC v. Zeeks, Inc., 02 Cv. 3231 (DFE), 2005 WL 2140994, at *2 (S.D.N.Y. Sept. 2, 2005) (distinguishing definition of "costs" used when applying Local Rule 54.2 from definition of "costs" in Appellate Rule 7 context).

ground that only court of appeals may determine if double costs are warranted).

### III. CONCLUSION

For the foregoing reasons, BizProLink shall post an appeal bond no later than September 28, 2007 in the amount of $800.00 as security for Plaintiff's printing and copying costs on appeal.

SO ORDERED.

```
                              _____
                                   SHIRLEY WOHL KRAM
                              UNITED STATES DISTRICT JUDGE
```

Dated:   New York, New York
         September 19, 2007