UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
IN RE AOL TIME WARNER, INC.          x
SECURITIES & "ERISA" LITIGATION      x    02 Cv. 5575 (SWK)
                                     x
                                     x    **OPINION AND ORDER**
------------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

On September 30, 2005, the Court certified a class (the "Class") for the settlement of securities fraud claims arising out of the merger of America Online, Inc. ("AOL") and Time Warner, Inc. into AOL Time Warner, Inc. At that time, the Court also preliminarily approved a settlement of the Class's claims (the "Settlement") and approved the distribution of notice (the "Notice") to Class members. The Court formally approved the Settlement in a final order signed April 19, 2006. In a submission received on October 11, 2007, Yigal Zakai ("Zakai"), a member of the Class, lodged a pro se objection to the method used by the settlement administrator, Gilardi & Co. ("Gilardi"), to determine the amount of Zakai's compensable loss pursuant to the Settlement's plan of allocation. For the reasons discussed below, the Court denies Zakai's objection and his request for reimbursement of litigation costs.

I.  **BACKGROUND**

Familiarity with the general context of this litigation is presumed. See generally In re AOL Time Warner Sec. & "ERISA"

Litig., 381 F. Supp. 2d 192 (S.D.N.Y. 2004) (partially granting motion to dismiss); In re AOL Time Warner, Inc. Sec. & ERISA Litig., MDL Docket No. 1500, 02 Cv. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) (approving settlement) (the "Settlement Approval Opinion"). The Court limits its discussion here to those facts and circumstances pertinent to the instant objection.

Following the Court's preliminary approval of the Settlement in this case, the Notice was distributed to approximately 4.7 million Class members. The Notice included the Settlement's proposed plan of allocation, which explained the methodology to be used in calculating each Class member's "Recognized Claim." (See Mot. for Prelim. Approval of Settlement, Declaration of Robert E. Forrest ("Forrest Decl.") Ex. 1.C (the "Plan of Allocation").) The Plan of Allocation provides each Class member with pro rata compensation for any loss suffered as a result of the alleged securities fraud, offset by any artificial inflation caused by that fraud. The Plan of Allocation outlined separate calculation methods to be used for purchasers of common stock, stock options, and bonds. The Court formally approved the Settlement, including the Plan of Allocation, in April 2006. See Settlement Approval Opinion, 2006 WL 903236, at *18.

2

In April 2007, in response to an inquiry from Zakai regarding the status of his claim, Gilardi informed Zakai that he would not recover any money under the Plan of Allocation, because Gilardi's calculation indicated that Zakai had actually enjoyed a gain from the alleged fraud instead of a loss. (Zakai's Objection 1-2.) For the next several months, Zakai's son corresponded with both Gilardi and counsel for the Class regarding this calculation, which he believed to be incorrect. After these attempts to resolve the dispute had failed, Zakai filed the objection currently under consideration. Minnesota State Board of Investment, the lead securities plaintiff ("Lead Plaintiff"), opposes the objection and maintains that Gilardi's calculation is correct.

The resolution of Zakai's objection requires the Court to determine first whether the objection, lodged some twenty-one months after the January 6, 2006 deadline for objecting to the Settlement (see Forrest Decl., Ex. 1.A ("Settlement Notice") 1), is untimely. Second, if Zakai's objection is not untimely, the Court must decide whether Gilardi's calculation of Zakai's claim is in accordance with the Plan's terms and is mathematically and economically sound. In Part II.A of this opinion, the Court concludes that, because the language of the Plan of Allocation contains a latent ambiguity, Zakai's objection is not time-barred. In Part II.B, the Court addresses the merits of Zakai's

objection and holds that Gilardi's calculation of his claim was not inconsistent with the language of the Plan and more accurately reflects the economic realities underlying this class-action litigation than does Zakai's proposed, alternative methodology.

## II. DISCUSSION

### A. Zakai's Objection is Not Untimely

The instant dispute turns on the parties' contrasting interpretations of the term "Recognized Claim," as it is used in both the Notice and the Plan of Allocation.[1] In its approval of the Settlement, the Court held that the Notice and Plan contained sufficient detail to allow recipients to determine whether they were members of the putative class, and to apprise them of the Settlement's terms. See <u>Settlement Approval Opinion</u>, 2006 WL 903236, at *16-*17. Thus, as a general matter, objections received after the January 6, 2006 objection deadline specified in the Notice are untimely. As the following analysis demonstrates, however, the Notice and Plan of Allocation contained an ambiguity that only became apparent upon the calculation of individual claims. Therefore, the Court will entertain Zakai's objection.

---

[1] There is no dispute between the parties as to the precise details of Zakai's put-option transactions, the amounts of fraud-related deflation in the options on the sale and repurchase dates, or the applicability of Section II.C.2(a) of the Plan of Allocation to Zakai's trades.

Section II.C.2(a) of the Plan of Allocation sets forth the calculation methodology for AOL or AOLTW put options sold during the securities class period of January 27, 1999 through and including August 27, 2002, as follows:

> (a) For put options which (1) were repurchased (covered) between January 27, 1999 and July 24, 2002; or (2) were exercised against the put writer between January 27, 1999 and July 24, 2002, the Recognized Claim shall be that number of options multiplied by the lesser of:
>
> > (i) The difference between Artificial Deflation per Option as determined by applying the Black-Scholes options pricing model on the date of sale and Artificial Deflation per Option on the date of repurchase (cover) or exercise; or
> >
> > (ii) The price per option on the date of repurchase (cover) or exercise less the sales price per option.

Gilardi calculated the amount of loss suffered by Zakai using the following methodology: For each of Zakai's 33 paired options transactions, Gilardi calculated (a) the difference between the option's purchase price and sale price, as priced by the Black-Scholes Model ("BSM") and utilizing the Artificial Inflation adjusted price of the underlying stock, and (b) the difference between the option's purchase price and sale price, otherwise known as the market loss. (Lead Pl.'s Opp'n, Declaration of Dennis Gilardi ("1st Gilardi Decl.") ¶ 5.) Gilardi selected the "lesser" of these two numbers and treated it as the "Recognized Claim" for each transaction. (See Lead

5

Pl.'s Surreply, Declaration of Dennis Gilardi ("2d Gilardi Decl.") ¶ 3 & Ex. A.) It then summed all 33 "Recognized Claims," offsetting gains (negative numbers) against losses (positive numbers) to arrive at an "aggregate Recognized Claim." (2d Gilardi Decl. ¶ 3.) Based on this methodology, Gilardi concluded that Zakai had suffered no fraud-related loss on his trades and therefore was not entitled to any recovery from the Settlement fund. (1st Gilardi Decl. ¶ 13.) Gilardi's methods reveal that it interpreted the term "Recognized Claim" to refer to two different steps of the calculation: a "Recognized Claim" is generated for each paired transaction, and these multiple "Recognized Claims" are then combined to produce an "aggregate Recognized Claim."

Zakai, however, possessed a different understanding of the term, based on the uses of "Recognized Claim" in the Notice and elsewhere in the Plan. Zakai posits that, for purposes of computing recovery pursuant to Section II.C.2(a) of the Plan of Allocation, the "Recognized Claim" is any loss figure generated by the first two steps of Gilardi's methodology. Thus, Zakai rejects Gilardi's contention that all of a Class member's transaction-specific losses or gains should be combined to produce an "aggregate Recognized Claim." Instead, according to Zakai, a Class member with multiple put-option transactions that resulted in losses should have multiple "Recognized Claims" and

6

should receive a pro rata sum of money for each one. In contrast, transactions that resulted in gains would not yield a "Recognized Claim," as the Class member would not have "recognized" any loss. The value of any "claim" inhering from a net-gain transaction would simply be zero.

A review of the uses of the term "Recognized Claim" in the Notice and Plan of Allocation, in light of the method Gilardi used to calculate Zakai's claim, reveals the ambiguity inherent in the documents' language. For example, Gilardi speaks of summing the figures for each paired transaction to arrive at an "aggregate Recognized Claim." (2d Gilardi Decl. ¶ 3.) Statements in the Notice and elsewhere in the Plan, however, create the impression that "aggregation" refers only to the summing of the claims of all Class members.[2] (See Settlement Notice 4 ("A Securities Class Member's actual recovery will be a proportion of the distributed funds determined by that person's or entity's Recognized Claim . . . as compared to the total Recognized Claims of all Securities Class Members . . . .").) Moreover, although Section II.C.2(a) of the Plan prescribes the calculation of a "Recognized Claim" for each set of paired put-option transactions, it does not then specifically mention the

---

[2] Indeed, Lead Plaintiff admits as much in its Opposition. (See Lead Pl.'s Opp'n 8 n.4.)

aggregation of these amounts into a single "Recognized Claim" for the options holder.

On the other hand, the Notice repeatedly indicates that the Plan is designed to calculate only one "Recognized Claim" per Class member. (See Notice 4 (explaining that recovery for individual Class member will be based on "that person's or entity's Recognized Claim"), ¶ 33 ("Each [member's] Recognized Claim, if any, is calculated as explained in the Plan of Allocation.").) The consistent reference to each Class member's single "Recognized Claim" supports the inference that there will be some aggregation process before a Class member's monetary recovery is calculated. This language tends to undermine Zakai's interpretation of the Notice and Plan.

Ultimately, although the terms of the Notice and Plan were adequate to allow putative Class members to recognize their inclusion in the Class and glean a basic understanding of the Settlement's terms, see Settlement Approval Opinion, 2006 WL 2006 WL 903236, at *16-*17, ambiguities in the specifics of options calculations, brought to light during the actual application of the terms, also exist. Zakai's interpretation of the term "Recognized Claim" as it appears in the Notice and Plan of Allocation is not objectively unreasonable. Therefore, the objection deadline does not operate as a bar to Zakai's

8

objection, and the Court will consider his objection as if it had been timely submitted.

### B. Gilardi's Application of the Plan of Allocation is Economically Sound

Zakai's challenge to the calculation of his recovery amount under the Plan of Allocation is at its core a challenge to the Plan itself. The Court will therefore consider his arguments as they bear on the Plan's fairness, reasonableness, and adequacy. See Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). In doing so, the Court is mindful that "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." Id. (citations omitted).

As an initial matter, although Section II.C.2(a) does not explicitly detail every step of the calculations process, the calculation method used by Gilardi is not, as Zakai argues, contrary to the language of the Plan. The first two steps of Gilardi's methodology (2d Gilardi Decl. ¶ 3) track the language of Section II.C.2(a). Furthermore, because Section II.C.2(a) makes no distinction between the treatment of gains and losses in the tabulation of Recognized Claims, the third step in Gilardi's calculation is not contrary to the Plan's language.

The reasonableness, fairness, and adequacy of Gilardi's calculation under the Plan become even more pronounced upon

consideration of the economic rationale for its method. As Lead Plaintiff correctly states, "the Plan recognizes only <u>fraud-related</u> losses for the purpose of allocating the [S]ettlement fund." (Lead Pl.'s Opp'n 4 (emphasis added).) The Notice sent to Class members clearly stated this fact (Settlement Notice ¶ 36), and the Court approved the distinction. <u>See</u> <u>Settlement Approval Opinion</u>, 2006 WL 903236, at *17. (<u>See</u> <u>also</u> Mot. for Final Approval of Settlement & Plan of Allocation 36 (distinguishing between "investment loss" and "inflationary loss").)

During the time of Zakai's put-option transactions, AOL's stock price fell. This drop in stock price, however, was due to factors <u>other</u> <u>than</u> the alleged fraud that formed the basis for the class-action litigation. In fact, the alleged fraud prevented AOL's stock price from dropping as much as it otherwise would have. (<u>See</u> Lead Pl.'s Opp'n, Declaration of Scott Hakala ("Hakala Decl.") ¶ 4.) Therefore, although the general drop in stock price caused Zakai to suffer losses from his put-option transactions, those losses were not fraud-related. (<u>See</u> Hakala Decl. ¶ 4.) The calculation method used by Gilardi comports with this economic rationale.

In his latest submission, Zakai essentially admits that Gilardi's economic rationale holds for the "vast majority of option holders" (<u>see</u> Zakai's Resp. to Surreply 5), but maintains that his case requires a unique approach because he did not "use

10

options [trading] for hedging." (Zakai's Resp. to Surreply 5.) According to Zakai, the alleged fraud's mitigation of the drop in AOL's stock price harmed him because it lured him into a pattern of "misguided investment," in which he completed "33 distinct transactions in the hopes of a turnaround of the stock." (Zakai's Resp. to Surreply 14.) Therefore, any "fraud-related gain" detected by Gilardi's calculation is illusory, as it actually enticed him to engage in further options trading instead of ceasing this activity. (See Zakai's Resp. to Surreply 14.)

Although Zakai's calculation method reflects his economic theory, it fails to do what Gilardi's method accomplishes, that is, account, in monetary terms, for fraud-related gains. By failing to account for such gains, Zakai's method would exaggerate the aggregate loss he actually suffered as a result of the defendants' alleged fraud. As such, his method would allow him to receive compensation for losses unrelated to that fraud. Furthermore, Zakai's method lacks the potential for class-wide applicability, as it would not be appropriate for options holders who lacked his "unique" motivation for options trading, and it would in any event be impossible to canvass all options holders to discern individual strategies.[3] See McLendon

---

[3] On this point, it is also notable that no other Class members have objected to the calculation of their claims under the Plan.

v. Continental Grp., Inc., 802 F. Supp. 1216, 1222 (D.N.J. 1992) (noting impossibility of consideration of individual circumstances, in light of paramount concern for settlement terms containing "uniform criteria which could be applied in a practical fashion").

Essentially, Zakai's objection asks the Court to use the Plan of Allocation's ambiguity to create an individualized exception to the calculation methodology otherwise applicable to put-option holders. Given the finite nature of the Settlement fund, this would allow Zakai to benefit at the expense of other Class members, based on little more than his claim of an idiosyncratic investment pattern. This the Court cannot do. More importantly, even if Zakai's arguments and alternative plan were more plausible, they nonetheless fail to persuade the Court that Gilardi's calculation method, imposed pursuant to the Plan of Allocation, lacks a "reasonable, rational basis." Maley, 186 F. Supp. 2d at 367. See also McLendon, 802 F. Supp. at 1222 ("[In a class-action settlement,] [s]ome may receive too much, some may receive too little, and some unfortunately may receive nothing at all, even though they believe in good faith that they are entitled to participate. But the goal here is fairness, not perfection which cannot be achieved."). The Court therefore denies Zakai's objection.

**C. Zakai's Request for Compensation**

Because Zakai is a pro se litigant, the Court next addresses his request for reimbursement of his costs in bringing his objection, although it was raised for the first time in his Reply. Zakai undoubtedly invested significant time and resources in pursuing his objection. Gilardi's provision of often terse, and sometimes oblique, explanations of their calculation methods further expanded these costs.[4] Indeed, had Gilardi provided Zakai the clear, step-by-step explanation that it submitted only after the Court solicited more detailed information, this dispute would have concluded at a much earlier stage. Nonetheless, the Court has found Zakai's objection to be without merit. Under the terms of the stipulation of Settlement, which was approved by the Court, referenced in the Notice (see Settlement Notice 2), and made available to the public on the settlement website (see http://www.aoltimewarnersettlement.com/pdf/altw1stip.pdf), "no person shall have any claim against [the Class representatives, Class counsel, the Settlement administrator, or experts involved with preparing and administering the Plan of Allocation], based on distributions made substantially in accordance with . . . the Plan of Allocation. . . ." (Forrest Decl. Ex. 7 at 29-30.)

---

[4] For example, when compared to the methodology enunciated in the Second Gilardi Declaration (see 2d Gilardi Decl. ¶ 3), the explanation provided in the First Gilardi Declaration is either extremely poorly worded or factually incorrect (see 1st Gilardi Decl. ¶ 8).

Because the tabulation of Zakai's claim was in accordance with the Plan, Zakai is not entitled to reimbursement of the costs of his objection.

The Court's opinion should not be interpreted as an indication that Zakai's interests were somehow minimal or his arguments trivial. The Court notes the magnitude of his effort in bringing this objection and the frustrations encountered along the way. The principles governing settlement oversight and administration, however, do not permit recalculation or recovery in this instance.

## III. CONCLUSION

Zakai's objection is hereby denied, and his Recognized Claim, as calculated by Gilardi, stands. Any party seeking review of this decision shall file with the district clerk a notice of appeal that complies with the requirements set forth in Federal Rule of Appellate Procedure 3. All notices of appeal must be filed within 30 days of the entry of this order. Fed. R. App. P. 4(a)(1)(A).

SO ORDERED.

```
                              _____
                              SHIRLEY WOHL KRAM
                              UNITED STATES DISTRICT JUDGE
```

Dated:   New York, New York
         July 30, 2008

Because the tabulation of Zakai's claim was in accordance with the Plan, Zakai is not entitled to reimbursement of the costs of his objection.

The Court's opinion should not be interpreted as an indication that Zakai's interests were somehow minimal or his arguments trivial. The Court notes the magnitude of his effort in bringing this objection and the frustrations encountered along the way. The principles governing settlement oversight and administration, however, do not permit recalculation or recovery in this instance.

### III. CONCLUSION

Zakai's objection is hereby denied, and his Recognized Claim, as calculated by Gilardi, stands. Any party seeking review of this decision shall file with the district clerk a notice of appeal that complies with the requirements set forth in Federal Rule of Appellate Procedure 3. All notices of appeal must be filed within 30 days of the entry of this order. Fed. R. App. P. 4(a)(1)(A).

SO ORDERED.

/s/ Shirley Wohl Kram
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated: New York, New York
July 30, 2008

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/30/08